IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ENERGY INTELLIGENCE GROUP INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **PECO ENERGY COMPANY**, <br><br> Defendant. | **CIVIL ACTION** <br><br> **NO. 21-2349-KSM** |

## MEMORANDUM

**MARSTON, J.**                                                                                          September 17, 2021

Plaintiff Energy Intelligence Group Inc. ("EIG") alleges that Defendant PECO Energy Company infringed on EIG's registered copyrights in several issues of its publication *Natural Gas Week* by making electronic copies of the publication in violation of the parties' single-license subscription agreement. (Doc. No. 1.) EIG brings a single count for willful copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, and requests that PECO be required to pay actual and statutory damages, disgorge any benefit it has obtained as a result of its copyright violations, pay EIG's costs and attorneys' fees, and be permanently enjoined from infringing upon EIG's copyrights. (*Id.* at ¶¶ 46–56, pp. 13–14.)

PECO has filed a Motion for a More Definite Statement, claiming that EIG's Complaint is too vague and ambiguous as to what works PECO allegedly infringed and as to how it allegedly infringed those works. (Doc. No. 7.) EIG opposes the motion. (Doc. No. 18.) Pursuant to Local Rule of Civil Procedure 7.1(f), the Court disposes of the Motion without argument.

For the reasons discussed below, the Court denies PECO's Motion.

I.

At this stage, the Court takes as true the facts alleged in EIG's Complaint. *See Godfrey*, 246 F. Supp. 3d at 1083 n.1. The relevant facts are as follows:

EIG publishes newsletters targeted towards the energy industry; these newsletters provide information and analysis "relating to the energy, natural gas, and related industries." (Doc. No. 1 at ¶¶ 7–9, 12.) One of these publications is *Natural Gas Week*, which is a publication that includes news and information related to the natural gas industry. (*Id.* at ¶¶ 7, 12; *see generally* Doc. No. 1-2.) EIG's publications, including *Natural Gas Week*, are supported by reader payments, not advertisements or sponsorships. (Doc. No. 1 at ¶¶ 10.)

EIG has copyrighted its publications and the articles they contain. (*See id.* at ¶¶ 18–19.) To protect these copyrights, EIG registers them with the U.S. Copyright Office. (*See id.* at ¶ 19.) In paragraph 19 of its Complaint, EIG lists thirty-four such registrations for issues of *Natural Gas Week*; EIG defines these registrations as the "Registered NGW Works." (*Id.*) To further protect its intellectual property rights, EIG appends copyright notices to its website, emails, individual articles, and publications, including *Natural Gas Week*. (*Id.* at ¶¶ 20–23.)

EIG offers several means by which its readers may access its products, including *Natural Gas Week*. (*Id.* at ¶¶ 14–17.) Interested individuals or parties may subscribe to *Natural Gas Week*; subscribers may receive new issues via email, as well as access to current or archived issues and individual articles on EIG's password-protected website. (*Id.* at ¶ 15.) Alternatively, readers may purchase individual articles or issues of *Natural Gas Week* for $24.00 per article or $395.00 per issue. (*Id.* at ¶¶ 16-17.)

Since May of 2004, PECO has maintained a subscription to *Natural Gas Week*. (*Id.* at ¶ 28.) This subscription entitles it to receive a single copy of *Natural Gas Week*, which is sent by

email to Maria Weible, one of PECO's Senior Energy Acquisitions Analysts.  (*Id.* at ¶¶ 28–29.) The copies of *Natural Gas Week* that Ms. Weible receives, as well as the delivery emails used to send them to her, contain copyright notices.  (*See id.* at ¶¶ 20–22, 24–26.)  Additionally, PECO's subscription agreement with EIG informed PECO that *Natural Gas Week* was proprietary intellectual property, and was not allowed to be shared with non-subscribers.  (*Id.* at ¶¶ 30–32; Doc. No. 1-5 at p. 3.)

PECO has secure servers and computer systems, which EIG has not been able to access. (Doc. No. 1 at ¶¶ 33, 39–40.)  Therefore, EIG has access to limited data regarding what PECO does with *Natural Gas Week* after it receives the publication by email.  (*Id.* at ¶ 33.)  However, the information EIG has indicates that PECO is violating the terms of its *Natural Gas Week* subscription, and thus violating EIG's copyrights.  (*See id.*)  Specifically, EIG alleges that PECO "has been making copies of the Registered NGW Works," as well as of individual *Natural Gas Week* articles, and distributing them to various PECO employees—notwithstanding the terms of PECO's single-copy *Natural Gas Week* subscription.  (*Id.* at ¶¶ 34, 41–42.)  EIG bases these allegations on the fact that "various" PECO employees "have downloaded certain information and images contained in the cover email provided with each issue of [*Natural Gas Week*]," and that several delivery emails have been opened many times on a variety of devices over a short period of time.  (*Id.* at ¶¶ 33, 35–37.)  EIG alleges that "the unlawful copying and distribution of the Registered NGW Works by [PECO] began as [sic] least as early as May 2017 and has continued through February 2020."  (*Id.* at ¶ 38.)

II.

Federal Rule of Civil Procedure 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or

3

ambiguous that the party cannot reasonably prepare a response." Rule 12(e) motions are necessary where the complaint "does not disclose the facts underlying a plaintiff's claim for relief"; in this situation, even under the liberal notice pleading standard established by the Federal Rules of Civil Procedure, "the defendant cannot be expected to frame a proper, fact-specific . . . defense." *Thomas v. Independence Township*, 463 F.3d 285, 301 (3d Cir. 2006). Motions under Rule 12(e) are "appropriate when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself." *Strike 3 Holdings, LLC v. Doe Subscriber Assigned IP Address 68.82.141.39*, 370 F. Supp. 3d 478, 483 (E.D. Pa. 2019) (quoting *Ulearey v. PA Servs., Inc.*, Civil Action No. 16-4871, 2017 WL 1283946, at *3 (E.D. Pa. Apr. 6, 2017)) (cleaned up). "Motions for a more definitive statement are generally disfavored, and are used to provide remedies for unintelligible pleadings rather than as correction for lack of detail." *Godfrey v. Upland Borough*, 246 F. Supp. 3d 1078, 1086 (E.D. Pa. 2017) (quoting *Stoneback v. ArtsQuest*, Civil Action No. 12-3286, 2012 WL 4963624, at *10 (E.D. Pa. Oct. 17, 2012)).

Motions under Rule 12(e) "must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). As such, courts considering Rule 12(e) motions must conduct a fact-specific inquiry, closely reviewing the allegedly deficient filing. Factors courts consider in weighing Rule 12(e) motions include: (1) whether the purportedly deficient filing provides enough information for the opposing party to conduct its own factual investigation, (2) the degree to which the moving party is able to identify the claims against it, and (3) whether there is a good-faith explanation for why certain information was excluded from the filing. *See Strike 3 Holdings*, 370 F. Supp. 3d at 483; *Country Classics Homeowners' Ass'n, Inc. v. Country Classics at Morgan Hill, LLC*, 780 F. Supp. 2d 367, 372 (E.D. Pa. 2011).

III.

The sole count in EIG's complaint is for copyright infringement in violation of 17 U.S.C. § 106.  (Doc. No. 1 at ¶¶ 46–56.)  "To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work."  *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005) (quoting *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)).  To satisfy Rule 12(e), EIG's Complaint must give PECO enough information to form a fact-specific defense to this claim.

PECO claims that EIG's Complaint falls short of this standard in three ways.  First, PECO says that it is unclear whether EIG is asserting infringement of the *Natural Gas Week* publication or the delivery emails.  (Doc. No. 7-1 at p. 1.)  Second, PECO argues that the Complaint fails to allege the number of devices on which EIG's delivery email was opened, or whether the *Natural Gas Week* attachment was opened each time the email was opened.  (*Id.* at pp. 1–2.)  Finally, PECO says that EIG has not made sufficiently clear which registered *Natural Gas Week* issues it has allegedly infringed.  (*Id.* at p. 2.)  The Court addresses each argument in turn.

A.

PECO argues that the Complaint fails to assert whether PECO violated EIG's copyrights in *Natural Gas Week*, or if EIG is asserting a claim of copyright infringement related to the delivery emails.  (*Id.* at pp. 1, 6–9.)  Specifically, PECO points to paragraphs 35 through 37 of the Complaint, in which EIG alleges that three of its *Natural Gas Week* delivery emails were accessed many times by several independent devices within a short period of time.  (*Id.* at p. 6

5

(quoting Doc. No. 1 at ¶¶ 35–37).)  Based on these allegations, PECO says that it does not "know which items it is accused of infringing."  (*Id.* at p. 8.)

Paragraph 19 of the Complaint identifies thirty-four registrations EIG has filed with the U.S. Copyright Office for issues of *Natural Gas Week* by registration number, *Natural Gas Week* volume, and the date of publication.  (Doc. No. 1 at ¶ 19.)  It also defines these registered works as the "Registered NGW Works."  (*Id.*)  Thereafter, the complaint refers to the Registered NGW Works some thirty-four times.  Here is a sampling of those references:

- "Upon information and belief, [PECO] has been copying and distributing copies of the Registered NGW Works to [PECO] employees."  (*Id.* at ¶ 34.)

- "Upon information and belief, the unlawful copying and distribution of the Registered NGW Works by [PECO] began as [sic] least as early as May 2017 and has continued through February 2020."  (*Id.* at ¶ 38.)

- "Upon information and belief, despite notice of the numerous Copyright Notice and Warnings against reproduction and copying and the terms and conditions of [PECO]'s subscriptions to NGW, [PECO] has been making copies of the Registered NGW Works, and the articles contained therein, and forwarding or otherwise distributing the same, all in violation of [EIG]'s copyrights in the Registered NGW Works."  (*Id.* at ¶ 41.)

- "[EIG] has never authorized [PECO] to copy, transmit, or distribute the Registered NGW Works in a manner exceeding the scope of its subscription licenses."  (*Id.* at ¶ 42.)

- "Upon information and belief, [PECO] actively and willfully infringed [EIG]'s registered copyrighted works and concealed its regular and systemic copying and forwarding of the Registered NGW Works, and the articles contained therein, from [EIG].  (*Id.* at ¶ 43.)

And so on.

With respect to PECO's alleged willful copyright infringement, EIG avers in Count One of the Complaint that it "owns all right, title, and interest in and to the Registered NGW Works," that it "has the exclusive right to reproduce the Registered NGW Works and distribute copies of the Registered NGW Works," and that PECO "has for years willfully copied and distributed the Registered NGW Works on a consistent and systemic basis."  (*Id.* at ¶¶ 48–49, 51.)  It is on this

basis that EIG asserts a claim of willful copyright infringement against PECO. (*See id.* at ¶¶ 54–55.)

These allegations are more than sufficient to put PECO on notice as to what copyrights EIG alleges were infringed: the thirty-four registered copyrights identified in paragraph 19 of the Complaint. *See Country Classics Homeowners' Ass'n*, 780 F. Supp. 2d at 372; *see also Beom Su Lee v. Roku Karaoke*, No. 18-cv-8633-KM-SCM, 2019 WL 2537932, at *11 (D.N.J. June 19, 2019) ("The complaint does not sink to the level of unintelligibly [sic] that would warrant a more definite statement. The defendants in this case are accused of the same conduct — using and providing karaoke machines in their respective establishments that have been programmed with the copyrighted works without obtaining a license."); *Fish Kiss LLC v. N. Star Creations, LLC*, Civil Action No. 17-8193 (JBS/AMD), 2018 WL 3831335, at *13 (D.N.J. Aug. 13, 2018) ("[Because] Plaintiffs' FAC and now SAC address most (if not all) of Defendants' allegations that they did not know which copyrighted materials were infringed, by virtue of the additions to the Complaint and the attached exhibits listing the specific designs that were infringed and how they were infringed, Defendants' request for a more definite statement will also be denied.").

B.

Second, PECO claims that EIG's allegations related to how many devices on which the *Natural Gas Week* delivery emails were opened are also vague and ambiguous. (Doc. No. 7-1 at pp. 1–2, 9–10.) Specifically, PECO says the Complaint fails to allege the number of unique devices and it is unclear how many openings EIG ascribes to each device. (*Id.* at p. 9.) Additionally, PECO argues that the Complaint does not indicate whether EIG is alleging that

merely opening the delivery email is the same thing as opening the relevant issue of *Natural Gas Week*. (*Id.*)

As EIG's Complaint tacitly acknowledges, at this point, it has limited information as to who opened the delivery emails, how many times they did so, or what they did when they opened them. (*See* Doc. No. 1 at ¶ 33.) Because PECO's "email servers, servers, and computer systems cannot be accessed by the general public or by [EIG]," EIG is limited to pleading what information it can glean from PECO's "activity on the servers of the third-party email delivery service . . . that delivers" *Natural Gas Week* to PECO. (*Id.* at ¶¶ 33, 40.) Based on that information, EIG alleges that PECO opened EIG's *Natural Gas Week* delivery emails "multiple times in short periods of time, using multiple unique devices," that PECO employees "have downloaded certain information and images" from the delivery emails, and that PECO "has been copying and distributing copies of the Registered NGW Works" to its employees. (*Id.* at ¶¶ 33–34.)

The reality of litigation in the digital age is that specific evidence of misconduct often takes place behind firewalls impermeable to the aggrieved party. This evidence is only available to the plaintiff during discovery; at the complaint stage it remains "peculiarly within the defendant's knowledge or control." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)). Requiring plaintiffs to plead specific facts related to this evidence in their complaints would allow malfeasance to go unpunished where the malefactors acted in the secrecy of a secure computer system.

So reasoning, several courts have denied motions to dismiss copyright infringement lawsuits brought by EIG based on facts substantially similar to those pled in this case. *See*

*Energy Intel. Grp., Inc. v. Exelon Generation Co.*, Case No. 20-cv-3983, 2021 WL 1561711, at *4 (N.D. Ill. Apr. 21, 2021) ("Given that defendant controls access to the information needed to plead with greater specificity, the complaint's allegations nudge plaintiff's infringement claims across the line from conceivable to plausible, although this is a close question. . . . Exelon cites no case holding that an inference of copying cannot be drawn from unexplained patterns of email messages being opened on hundreds of different devices. Accordingly, the complaint satisfies the strictures of Rule 8(a)." (quotation omitted)); *Energy Intel. Grp., Inc. v. Bank of Am., N.A.*, Civil Action No. 4:17-CV-3767, 2018 WL 3303166, at *7 (S.D. Tex. July 5, 2018) ("EIG's complaint identifies the copyrights at issue, the relevant time period, and the individuals likely to be involved if any infringement occurred. These allegations put BANA on notice, permitting it to defend itself."); *see also Energy Intel. Grp., Inc. v. Tudor, Pickering, Holt & Co. Sec., Inc.*, Civil Action No. H-12-1945, 2013 WL 321668, at *2 (S.D. Tex. Jan. 28, 2013) ("EIG alleges, and it is undisputed, that it has a copyright for the publications of *Oil Daily*. EIG alleges that TPH copied and distributed *Oil Daily* to unauthorized users. These allegations, if proven, state a claim of copyright infringement." (citation omitted)).

The Court finds this reasoning persuasive.[1] Specific information as to which PECO employees accessed what, and on which devices and how many times they did so, is "peculiarly within [PECO's] knowledge and control." *McDermott*, 649 F. App'x at 267–68 (quoting *In re Rockefeller Ctr.*, 311 F.3d at 216). EIG's Complaint identifies "the copyrights at issue, the relevant time period, and the individuals likely to be involved if any infringement occurred"— sufficient information for PECO to conduct its own investigation into the truth or falsity of EIG's

---

[1] The Court acknowledges that these opinions concerned motions challenging whether EIG had stated a claim upon which relief can be granted, not motions for a more definite statement under Rule 12(e). However, a finding that a complaint is intelligible is a necessary prerequisite for finding that a plaintiff has stated a claim upon which relief can be granted.

claims.  *Energy Intel. Grp., Inc.*, 2018 WL 3303166, at *7; *see also Strike 3 Holdings*, 370 F. Supp. 3d at 483.  At this stage, EIG's allegations are sufficient.

C.

Finally, PECO argues that whereas paragraph 19 of EIG's complaint, identifies thirty-four registered copyrights, paragraphs 35 through 37 of EIG's complaint only identify three delivery emails that serve as the basis for EIG's allegation that PECO impermissibly copied its works.  (Doc. No. 7-1 at pp. 2, 10.)  As such, PECO says it cannot tell whether it is accused of copying more than the works that were delivered via those three emails.  (*Id.* at p. 10.)  This argument is unavailing.

As discussed above in Part III.A, EIG's Complaint identifies the works that PECO is alleged to have infringed:  the works comprising the thirty-four registrations listed in paragraph 19.  Moreover, while paragraphs 35 to 37 only identify three delivery emails that were allegedly broadly accessed by PECO employees (Doc. No. 1 at ¶¶ 35–37), the surrounding paragraphs provide more context for these claims.  In paragraph 34, EIG asserts that PECO "has been copying and distributing copies of the Registered NGW Works to [PECO] employees."  (*Id.* at ¶ 34.)  Then, after discussing the *Natural Gas Week* delivery emails that were allegedly broadly accessed within PECO in paragraphs 35 through 37, paragraph 38 asserts that "the unlawful copying and distribution of the Registered NGW Works by [PECO] began as [sic] least as early as May 2017 and has continued through February 2020."  (*Id.* at ¶¶ 35–37.)

These paragraphs, taken together with EIG's repeated allegations that PECO has infringed its copyrights in the "Registered NGW Works"—the works comprising the thirty-four U.S. Copyright Office registrations—are enough to put PECO on notice as to which *Natural Gas Week* issues it is alleged to have infringed, and give it sufficient information to conduct its own

factual investigation. *See Fish Kiss LLC*, 2018 WL 3831335, at *13; *Strike 3 Holdings*, 370 F. Supp. 3d at 483.

IV.

For these reasons, the Court finds that EIG's Complaint is neither so vague nor so ambiguous that PECO cannot reasonably prepare a response. Accordingly, the Court denies PECO's Motion for a More Definite Statement.

An appropriate Order follows.