**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ENERGY INTELLIGENCE GROUP INC.**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 21-2349-KSM** |
| **PECO ENERGY COMPANY**, | |
| Defendant. | |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                    **February 2, 2022**

Plaintiff Energy Intelligence Group Inc. ("EIG") brings copyright infringement claims against Defendant PECO Energy Company ("PECO") alleging that PECO wrongfully distributed EIG's copyrighted newsletter to employees who were not subscribed to the newsletter. (Doc. No. 1.)  Presently before the Court is EIG's Motion for Leave to File First Amended Complaint.  (Doc. No. 34.)  For the reasons below, EIG's motion is granted.

## I.    BACKGROUND

### A.    *The Original Complaint*

Taking the allegations in the Original Complaint as true, the relevant facts are as follows.

EIG publishes specialized newsletters in the global energy sector.  (Doc. No. 1 ¶ 7.) Since 1984, EIG and its predecessors have published the weekly newsletter *Natural Gas Week* ("*NGW*"), which provides articles and analysis on the natural gas industry.  (*Id.* ¶¶ 7, 9.)  EIG holds copyright registrations on each volume of *NGW*.[1]  (*Id.* ¶ 19.)  In compliance with federal

---

[1] Each volume of *NGW* consists of every copy of *NGW* published each month.  (Doc. No. 1 ¶ 19.)

copyright law, *NGW* includes copyright notices and warnings so readers are aware of EIG's "rights in its publications."  (*Id.* ¶ 20.)  The copyright notices warn that "[r]eproduction or distribution internally or externally in any manner . . . , including by sharing printed copies, or forwarding or posting on local- and wide-area networks and intranets, . . . is strictly prohibited without appropriate license . . . ."  (*Id.*)

EIG operates on a subscription model.[2]  (*Id.* ¶ 15.)  Since May 2004 PECO has maintained a single, annual subscription to *NGW*.[3]  (*Id.* ¶ 28.)  EIG's subscription agreements, which PECO agreed to in subscribing to *NGW*, provide that "[a]ll unauthorized reproductions, or disseminations or other uses of material [from *NGW*] . . . shall be deemed willful infringement of EIG's copyright."  (*Id.* ¶ 31.)  EIG employs a third-party email delivery monitoring service (the "Email Monitoring System") that tracks activity on emails EIG sends to its subscribers, such as the emails EIG sends transmitting *NGW*.  (*Id.* ¶ 33.)  "Data from the [Email Monitoring System] indicates that the emails delivering *NGW* were opened multiple times in short periods of time, using multiple unique devices."[4]  (*Id.* ¶ 34.)  EIG claims that this data shows PECO copied and distributed copies of *NGW* to its employees.  (*Id.* ¶¶ 34, 38.)

### B.    *The Proposed Amended Complaint*

In August 2021, EIG learned that PECO has saved copies of *NGW* to a shared drive that is accessible by multiple PECO employees since at least May 2004.  (Doc. No. 34-2 ¶¶ 36–50.)

---

[2] Non-subscribers may access EIG's newsletters on a per article, per copy basis (at a rate of $24.00 per article, per copy) or on a per issue, per copy basis (at a rate of $395.00 per issue, per copy). (Doc. No. 1 ¶¶ 16–17.)

[3] Although the actual PECO employee who receives the *NGW* subscription has changed with personnel turnover, PECO has maintained only one subscription to *NGW*.  (Doc. No. 1 ¶ 29.)

[4] For instance, "the email delivering the September 2, 2019 Registered *NGW* Work to [the subscribing employee] was opened approximately 29 times on 14 unique devices," (Doc. No. 1 ¶ 35) and "the email delivering the issue of *NGW* dated April 8, 2019 . . . to [the subscribing employee] was opened approximately 21 times by 7 unique devices" (*id.* ¶ 26).

EIG moved to amend its complaint on December 3, 2021[5] to include allegations of infringement beginning in 2004 (*id.* ¶ 19) and allegations about PECO's newly uncovered method of infringement (saving copies of *NGW* to a shared drive) (*id.* ¶ 41).

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 15(a), where a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id.*  In determining whether justice requires the court to allow amendment, the court must consider whether amendment would unduly "prejudice" the opposing party.  *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279 (E.D. Pa. 2010).  "Prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1993)).  "In the absence of substantial or undue prejudice, denial [of a motion for leave to amend] must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Heyl & Patterson Int'l, Inc. v. F. D. Rich Hous. of the V.I., Inc.*, 663 F.2d 419, 425 (3d Cir. 1981).

## III.   ANALYSIS

PECO argues that the Court should deny EIG's motion for leave to amend because the proposed amendment would prejudice PECO, was unduly delayed, and would be futile.  (Doc. No. 35 at 1.)  The Court considers each argument in turn.

---

[5] EIG's Motion for Leave to File First Amended Complaint was filed by the deadline provided in the Amended Scheduling Order.  (*See* Doc. No. 33 ¶ 1 (requiring "[a]ll motions to amend the complaint" to be filed "no later than December 3, 2021").)

### A.      Leave to Amend Would Not Prejudice PECO

First, PECO argues that the proposed amendment would be unduly prejudicial because it "is based on an entirely new theory of the case" and "will substantially increase the burden and expense of discovery for PECO in this matter." (Doc. No. 35 at 5.) To show undue prejudice, a defendant must "demonstrate that its ability to present its case would be seriously impaired were amendment allowed." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990). In assessing potential prejudice, courts consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton v. Nat'l Coll. Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

PECO would not be prejudiced if leave to amend were granted. The Proposed Amended Complaint is clearly not "based on an entirely new theory of the case." In the Original Complaint, EIG alleges that PECO violated its copyrights by forwarding *NGW* to non-subscribing employees. (Doc. No. 1 ¶ 41.) In the Proposed Amended Complaint, EIG alleges that PECO violated its copyrights by downloading *NGW* and saving it to a shared drive that is accessible by non-subscribing employees. (Doc. No. 34-2 ¶ 41.) The same theory undergirds both complaints:  one PECO employee received *NGW*, and that person distributed *NGW* to other PECO employees who did not subscribe to the newsletter. Rather than presenting a *new* legal theory, the proposed amendment simply presents additional facts in support of the *same* legal theory. *See Dole*, 921 F.2d at 488 (explaining that the proposed amended complaint was "based upon facts and circumstances which do not differ significantly from those underlying the [the plaintiff's] original allegations" where the proposed amendment sought only to add more specific allegations regarding the defendant's alleged wrongdoing); *Anthony v. Seltzer*, CIVIL ACTION NO. 14-5554, 2019 WL 528271, at *4 (E.D. Pa. Feb. 8, 2019) (granting leave to amend where

the plaintiff sought to allege additional factual bases for claims based on documents the defendants withheld until the end of discovery).

The proposed amendment will also not necessitate substantial new discovery.  Discovery is still underway, and, at the time this motion was briefed, neither party had taken any depositions.  (Doc. No. 17 ¶ 2; Doc. No. 34 at 3.)  The parties still have the opportunity to take discovery on the shared drive and to investigate the validity of the EIG's copyrights on the additional allegedly infringed issues of *NGW* as needed.  *See Fargione v. Sweeney*, CIVIL ACTION NO. 16-5878, 2018 WL 3533704, at *6 (E.D. Pa. July 23, 2018) (granting leave to amend where "[n]o new claims [were] being asserted and discovery [had] not yet closed"); *Pa. Full Court Press, Inc. v. Nolo, Inc.*, CIVIL ACTION No. 13-918, 2013 WL 12149715, at *1 (E.D. Pa. Oct. 16, 2013) ("There also is minimal prejudice to Defendants and LawTek from the amendments . . . .  LawTek was identified in the Complaint and discovery has not yet concluded."); *cf. Grant Heilman Photography, Inc. v. Pearson Educ., Inc.*, CIVIL ACTION NO. 11-cv-4649, 2012 WL 12897914, at *1 (E.D. Pa. July 27, 2012) (denying the plaintiff's motion for leave to amend because the motion, which was filed on the last day of discovery and sought to "extensively amend" the complaint, would unduly prejudice the defendants).  Moreover, EIG only learned about the shared drive when PECO made the strategic choice to reveal that information in late August 2021 in connection with settlement discussions (Doc. No. 34 at 2), so PECO cannot now use its decision to delay disclosure of this information as the basis of its argument that it would be prejudiced by the proposed amendment, *see Mullin v. Balicki*, 875 F.3d 140, 157 (3d Cir. 2017) ("A defendant that possesses an explosive document unknown to the plaintiff may use the legitimate litigation strategies at hand to delay disclosure of that document until absolutely necessary, but that delay cannot thereafter form that defendant's

argument for prejudice if it leads to a belated request to amend."); *Anthony*, 2019 WL 528271, at *4 (explaining that the defendants' strategic decision to withhold a key document could not later "form that defendant's argument for prejudice").[6]

Because EIG has not meaningfully shifted legal strategies and the parties will not need to undertake a substantial additional discovery, PECO will not be prejudiced by the proposed amended complaint.[7]

### B.      EIG's Motion for Leave to Amend Is Not Unduly Delayed

Next, PECO argues that "[t]he prejudice [it] will suffer from the proposed amendment is compounded by EIG's delay in attempting to amend."  (Doc. No. 35 at 7.)  "Delay alone is not sufficient to justify denial of leave to amend."  *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (quoting *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)).  However, where a plaintiff delays its amendment for so long as to place an "unwarranted burden on the court . . . and an unfair burden on the opposing party," the delay becomes "undue" and may justify denial of leave to amend.  *Id.*

EIG did not unduly delay its request for leave to amend.  EIG sought leave to amend *before* the deadline set by the Court in the First Amended Scheduling Order, so its motion is

---

[6] The cases PECO cites in support of its argument that it would be prejudiced are inapposite.  For instance, in *Cureton*, the Third Circuit affirmed the district court's decision denying the plaintiff's motion for leave to amend where the post-judgment motion was filed three years after the complaint and was based on factual information that the plaintiff had known for nearly two-and-a-half years before it filed the motion for leave to amend.  252 F.3d at 273–74.  None of those factors are present in the case at hand: EIG has only recently learned of the shared drive and discovery is still underway.

[7] Considerations of judicial economy also weigh in favor of granting leave to amend.  Were the Court to deny this motion, EIG would likely file a second suit against PECO based on this newfound method of alleged infringement.  *See Attias v. 532 Brooklyn, LLC*, CIVIL ACTION NO. 19-866, 2019 WL 6769963, at *4 (E.D. Pa. Dec. 12, 2019) ("[A] refusal to allow amendment of the Complaint will likely result in the filing of a third related action, which will either need to be administratively consolidated with the [other actions] or will have to be litigated separately despite the involvement of the same parties and similar types of transactions.  Thus, considerations of judicial economy counsel in favor of allowing amendment.").

presumptively timely.  *See McRobie v. Credit Protection Assoc.*, No. 5:18-cv-00566, 2018 WL 5608121, at *2 (E.D. Pa. Oct. 30, 2018) ("Plaintiff has sought leave to amend her complaint within the window this Court set to allow amendment of pleadings.  Thus, her motion for leave to amend is not unduly delayed."); *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, Civil Action No. 15–5477, 2017 WL 4404567, at *2 (D.N.J. Oct. 4, 2017) ("As an initial matter, plaintiff's timeliness in seeking leave, within the deadline for amending pleadings proposed by the parties (including Lotte USA) and set by the Court pursuant to Rule 16, seems incongruous with Lotte USA's argument that plaintiffs delayed in filing this motion.").

Further, EIG has exercised diligence in connection with the proposed amendment.  It learned that PECO distributed *NGW* through a shared drive at a settlement conference on August 30, 2021, (Doc. No. 25 at 7), promptly sought discovery into the contents of the shared drive, raised a discovery dispute related to the shared drive on November 9, 2021 (Doc. No. 32), and moved to amend less than one month later (Doc. No. 34).  *See Live Face on the Web, LLC v. Control Grp. Media Co.*, CIVIL ACTION NO. 2:15-cv-01306-JCJ, 2016 WL 3476265, at *3 ("We view [the moving party's] recent discovery of previously unknown information to be a sound reason, we find [they] have not unduly delayed in seeking to add counterclaims.")

### C.    *The Proposed Amendment Is Not Futile*

Finally, PECO argues that the proposed amendment would be futile, "as the allegations are time-barred on their face."  (Doc. No. 35 at 4.)  "Amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  *McCormick v. Kline*, 670 F. App'x 764, 766 (3d Cir. 2016) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (cleaned up).  Where a proposed amendment seeks to include time-barred claims, amendment would be futile as to the time-barred claims.  *See*

*Munchak v. Ruckno*, 692 F. App'x 100, 102 (3d. Cir. 2017) (per curiam).  PECO contends that

the proposed additional allegations of infringement, which date back to 2004, are time barred

because the Copyright Act requires that civil actions be commenced "within three years after the

claim accrued."  (Doc. No. 35 at 8–9 (quoting 17 U.S.C. § 507).)  EIG responds that its claims

are not time barred because these claims did not accrue until August 2021, when EIG first

learned of the additional alleged acts of infringement.  (Doc. No. 36 at 4.)

      The Copyright Act's three-year statute of limitations starts running when a plaintiff's

claim accrues.  17 U.S.C. § 507(b).  The Third Circuit applies the discovery rule, so a copyright

claim accrues "when the plaintiff discovers, or with due diligence should have discovered, the

injury that forms the basis for the claim."  *William A. Graham Co. v. Haughey*, 568 F.3d 425,

433 (3d Cir. 2009).  In assessing when a plaintiff "should have discovered" the basis of its

claims, courts consider when the plaintiff "had sufficient information of possible wrongdoing to

place it on inquiry notice or to excite storm warnings of culpable activity."  *Id.* at 438.  The

defendant bears the burden of "demonstrating such storm warnings."  *Id.*  If they do so, the

plaintiff must show that it "exercised reasonable due diligence and yet was unable to discover its

injuries."  *Id.*

      EIG's claims are not time barred.  Nothing on the face of the Proposed Amended

Complaint suggests that EIG had actual or inquiry notice that PECO had been improperly

distributing *NGW* by saving it to a shared drive until August 2021.[8]

      First, EIG did not have actual knowledge that PECO had been engaging in this practice

until PECO disclosed the practice to EIG in August 2021.  (Doc. No. 35 at 3 ("[O]n August 30,

2021, PECO informed EIG that its investigation showed that it had saved *NGW* to a drive

---

[8] And EIG sought leave to amend three months later, well within the three-year limitations period
provided in the Copyright Act.  (Doc. No. 34.)

. . . .").)  The Email Monitoring System only detects when subscribers improperly forward the emails transmitting its newsletters; it "cannot detect when the actual .pdf of the *NGW* publication is copied independently from the original email delivering the publication."  (Doc. No. 36 at 6.) And PECO's alleged wrongful distribution of the newsletter was *internal*, so EIG had no other way of knowing this was happening.  (Doc. No. 35 at 5–6.)

Next, PECO has failed to identify any "storm warnings" that reasonably should have alerted EIG to PECO's alleged wrongdoing.  PECO contends that because EIG was monitoring PECO and because the Email Monitoring System had indicated that "the emails delivering *NGW* were opened multiple times in short periods of time using multiple unique devices," EIG was on inquiry notice of PECO's wrongdoing.  But "inquiry notice demands more than evidence that a person is a bad actor in some general sense before a court can conclude that a storm warning exists as to a specific cause of action."  *William A. Graham*, 568 F.3d at 440.  The fact that EIG was monitoring PECO and learned that PECO was wrongfully distributing *NGW* using one method (email forwarding) did not put EIG on notice that PECO was wrongfully distributing *NGW* by an entirely unrelated method (saving to a shared drive).  *See Travelers Cas. & Surety Co. v. Falkowski*, No. CIVIL ACTION NO. 15-6737, 2021 WL 2784832, at *3 (E.D. Pa. July 2, 2021) ("Just because Plaintiff was aware in 2015 that it had been defrauded does not mean that it was aware of which individuals were involved, or what their fraudulent conduct was.").

Finally, even if there were storm warnings of PECO's infringement, the statue of limitations argument is an affirmative defense, and courts will not consider whether a plaintiff failed to exercise "reasonable diligence" at the pleadings stage.  *Schmidt v. Skolas*, 770 F.3d 241, 252–53 (3d Cir. 2014) ("[I]t was premature for the District Court to dismiss Schmidt's complaint on statute of limitations grounds at this early stage of the litigation.").  Nothing in the Proposed

Amended Complaint suggests that EIG was aware of PECO's practice of saving *NGW* to a shared drive until PECO told them about this practice in discovery.  Questions about what information the Email Monitoring System captured and whether EIG should have taken more actions to investigate PECO's alleged infringement cannot be resolved on the information the Court is permitted to consider at this stage.  *Id.* ("[I]t is impossible to tell based on the documents properly considered at th[e motion to dismiss] stage how much [the plaintiff] knew, and when."); *Travelers Cas. & Surety Co.*, 2021 WL 2784832, at *3 (rejecting the defendant's argument that the plaintiff's claim should be dismissed as time-barred because the plaintiff had not "pleaded itself out of court" and reasonable minds would differ about whether "Plaintiff should have reasonably known of [the defendants'] involvement").

## IV.    CONCLUSION

Because the Proposed Amended Complaint will not prejudice PECO, is not unduly delayed, and would not be futile, the Court grants EIG's Motion for Leave to File First Amended Complaint.  An appropriate Order follows.